# No. 23-965(L)

**23-967(CON), 23-970(CON), 23-972(CON), 23-973(CON), 23-974(CON), 23-975(CON), 23-976(CON), 23-977(CON), 23-978(CON), 23-979(CON), 23-980(CON), 23-982(CON), 23-983(CON), 23-986(CON), 23-987(CON), 23-988(CON), 23-989(CON), 23-990(CON), 23-991(CON)**

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

―――――――――

IN RE: FAIRFIELD SENTRY LIMITED,

*Debtor.*

―――――――――

On Appeal from the United States District Court
for the Southern District of New York
No. 19-cv-3911

―――――――――

### RESPONSE BRIEF FOR PLAINTIFFS-APPELLEES

―――――――――

DAVID J. MOLTON
MAREK P. KRZYZOWSKI
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

PAUL D. CLEMENT
 *Counsel of Record*
MATTHEW D. ROWEN*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Supervised by principals of the firm who are members
of the Virginia bar

*Counsel for Plaintiffs-Appellees*

October 20, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Kenneth M. Krys and Greig Mitchell, in their capacities as liquidators and foreign representatives of Fairfield Sentry Limited (In Liquidation), Fairfield Sigma Limited (In Liquidation), and Fairfield Lambda Limited (in Liquidation) (together, the "Funds"), hereby state that none of the Funds has a parent corporation, and there is no publicly held corporation owning ten percent (10%) or more of the shares of any of the Funds.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES.................................................................................... iii

INTRODUCTION ................................................................................................... 1

ISSUE PRESENTED ............................................................................................... 5

STATEMENT OF THE CASE AND FACTS ........................................................... 5

    A.    Legal Background .............................................................. 5

    B.    Factual Background.............................................................. 9

    C.    Procedural Background .......................................................11

SUMMARY OF ARGUMENT............................................................................... 13

ARGUMENT ........................................................................................................ 17

I.    The Courts Below Correctly Held That The Bankruptcy Code Safe
Harbor Does Not Bar The Liquidators' BVI Constructive Trust
Claims ........................................................................................................ 17

    A.    The Liquidators' Constructive Trust Claims Against
Defendants Are Not "Avoidance Claims"........................................... 18

    B.    Implied-Preemption Principles Do Not Apply to Foreign
Common Law Claims........................................................ 32

II.    In Any Event, Allowing The Constructive Trust Claims To Proceed
Is Consistent With The Purposes And Design Of Chapter 15 ...................... 39

CONCLUSION ..................................................................................................... 47

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Al-Kurdi v. United States*,
    25 Cl. Ct. 599 (1992) ......................................................................33

*Allegaert v. Perot*,
    548 F.2d 432 (2d Cir. 1977).............................................................22

*AP Servs. LLP v. Silva*,
    483 B.R. 63 (S.D.N.Y. 2012) ...................................................... 26, 40

*Barnhill v. Johnson*,
    503 U.S. 393 (1992)...........................................................................6

*Berizzi Bros. Co. v. The Pesaro*,
    271 U.S. 562 (1926).........................................................................35

*BP P.L.C. v. Mayor & City Council of Balt.*,
    141 S.Ct. 1532 (2021)......................................................................45

*Comrie v. IPSCO Inc.*,
    2008 WL 5220301 (N.D. Ill. Dec. 10, 2008)............................... 34, 38

*Contemp. Indus. Corp. v. Frost*,
    564 F.3d 981 (8th Cir. 2009)............................................................26

*El Ajou v. Dollar Land Holdings Ltd.*
    [1994] 2 All E.R. 685......................................................................25

*Fairfield Sentry Ltd. v. Citibank, N.A. London*,
    630 F.Supp.3d 463 (S.D.N.Y. 2022) ......................................... *passim*

*Fidelity Fin. Servs., Inc. v. Fink*,
    522 U.S. 211 (1998)..................................................................... 6, 21

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
    796 F.3d 520 (5th Cir. 2015)..............................................................8

*Freeman v. HSBC Holdings PLC*,
    57 F.4th 66 (2d Cir. 2023)...............................................................29

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000) ............................................................................34

*Greene v. United States*,
  13 F.3d 577 (2d Cir. 1994) .................................................................30

*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017) ..............................................................................46

*Hillman v. Maretta*,
  569 U.S. 483 (2013) ...................................................................... 27, 39

*In re Agro Santino, OOD*,
  653 B.R. 79 (Bankr. S.D.N.Y. 2023) ...................................................38

*In re Bankr. Estate of Norske Skogindustrier ASA*,
  629 B.R. 717 (Bankr. S.D.N.Y. 2021) .................................... 22, 33, 43

*In re Bethlehem Steel Corp.*,
  390 B.R. 784 (Bankr. S.D.N.Y. 2008) .................................................22

*In re Condor Ins. Ltd.*,
  601 F.3d 319 (5th Cir. 2010) ...................................................... *passim*

*In re Fairfield Sentry Ltd.*,
  458 B.R. 665 (S.D.N.Y. 2011) .................................................... *passim*

*In re Fairfield Sentry Ltd.*,
  2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ..............10, 11, 12

*In re Fairfield Sentry Ltd.*,
  2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ................. *passim*

*In re Fairfield Sentry Ltd.*,
  2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021)..................... *passim*

*In re Fairfield Sentry Ltd.*,
  596 B.R. 275 (Bankr. S.D.N.Y. 2018) .................................................12

*In re Fairfield Sentry Ltd.*,
  714 F.3d 127 (2d Cir. 2013) ...................................................... 37, 38, 46

iv

*In re Hechinger Inv. Co. of Delaware*,
    274 B.R. 71 (D. Del. 2002)....................................................26

*In re Lehman Bros. Holdings Inc.*,
    469 B.R. 415 (Bankr. S.D.N.Y. 2012)....................................... *passim*

*In re Lehman Bros. Holdings Inc.*,
    970 F.3d 91 (2d Cir. 2020)............................................. 30, 31

*In re Maxwell Commc'n Corp.*,
    93 F.3d 1036 (2d Cir. 1996)..................................................35

*In re McKenna*,
    238 F.3d 186 (2d Cir. 2001)..................................................30

*In re Nine West LBO Sec. Litig.*,
    482 F.Supp.3d 187 (S.D.N.Y. 2020) .......................................26

*In re Nortel Networks Corp. Sec. Litig.*,
    539 F.3d 129 (2d Cir. 2008)..................................................30

*In re Petrobras Sec. Litig.*,
    169 F.Supp.3d 547 (S.D.N.Y. 2016) ......................................34

*In re Quorum Health Corp.*,
    2023 WL 2552399 (Bankr. D. Del. Mar. 16, 2023) .............. 21, 26, 40

*In re Ran*,
    607 F.3d 1017 (5th Cir. 2010)...............................................38

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) ...................................42

*In re SPhinX, Ltd.*,
    371 B.R. 10 (S.D.N.Y. 2007) ...............................................42

*In re Tribune Co. Fraudulent Conv. Litig.*,
    946 F.3d 66 (2d Cir. 2019) ....................................... *passim*

*In re U.S. Mortg. Corp.*,
    492 B.R. 784 (Bankr. D.N.J. 2013) .......................................40

*In re Vitro S.A.B. de CV*,
701 F.3d 1031 (5th Cir. 2012)...............................................................8

*In re Worldcom, Inc.*,
401 B.R. 637 (Bankr. S.D.N.Y. 2009) ..................................................22

*Kansas v. Garcia*,
140 S.Ct. 791 (2020)..............................................................................34

*LaSala v. Bordier et Cie*,
519 F.3d 121 (3d Cir. 2008) .................................................... 34, 35, 38

*Linde v. Arab Bank, PLC*,
706 F.3d 92 (2d Cir. 2013)....................................................................35

*Mahon v. Justice*,
127 U.S. 700 (1888)...............................................................................35

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
138 S.Ct. 883 (2018)..................................................................... *passim*

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
139 S.Ct. 1652 (2019)..............................................................................6

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)...............................................................................17

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*,
612 F.3d 97 (2d Cir. 2010) ...................................................................34

*Schwartz v. Pierucci*,
60 B.R. 397 (E.D. Pa. 1986) .................................................................26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013). ....................................41

*The Schooner Exch. v. McFaddon*,
11 U.S. (7 Cranch) 116 (1812)..............................................................35

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*,
892 F.Supp.2d 805 (N.D. Tex. 2012)....................................................27

*Williams v. Marinelli*,
   987 F.3d 188 (2d Cir. 2021) ...................................................................................34

**Constitutional Provision**

U.S. Const., art. VI, cl. 2 ........................................................................................34

**Statutes**

11 U.S.C. §103 ...........................................................................................................6

11 U.S.C. §544 .................................................................................................. 6, 25

11 U.S.C. §545 ...........................................................................................................6

11 U.S.C. §546 ............................................................................................... *passim*

11 U.S.C. §547 ...........................................................................................................6

11 U.S.C. §548 ............................................................................................... 3, 6, 7

11 U.S.C. §561 ............................................................................................... 18, 32

11 U.S.C. §701 ...........................................................................................................5

11 U.S.C. §1104 .........................................................................................................5

11 U.S.C. §1501 .................................................................................. 15, 37, 41, 44

11 U.S.C. §1506 .................................................................................... 8, 37, 46, 47

11 U.S.C. §1507 .................................................................................... 8, 37, 41, 44

11 U.S.C. §1508 .......................................................................................................41

11 U.S.C. §1509 .........................................................................................................7

11 U.S.C. §1511 .........................................................................................................9

11 U.S.C. §1512 .........................................................................................................9

11 U.S.C. §1515 .........................................................................................................7

11 U.S.C. §1521 ................................................................................................. 7, 44

11 U.S.C. §1523 ...........................................................................9

11 U.S.C. §1525 ................................................................... *passim*

15 U.S.C. §78bb .........................................................................38

29 U.S.C. §1144 .........................................................................38

**Other Authorities**

8 *Collier on Bankruptcy* ¶1501.01 .............................................8

Appellees' Br., *In Re Fairfield Sentry Ltd.*,
  No. 22-2101 (2d Cir. Jan. 27, 2023), ECF 661 ....................33

Avoiding Power, *Norton Bankr. L. & Prac. 3d Dict. of Bankr. Terms*
  §A160................................................................................ 6, 23

Br. for Appellants, *In Re Fairfield Sentry Ltd.*,
  No. 22-2101 (2d Cir. Jan. 27, 2023), ECF 227 .............. 13, 21, 43, 45

Opening Br. for Second-Round Appeal, *In re Fairfield Sentry Ltd.*,
  No. 19-cv-3911 (S.D.N.Y. Jul. 21, 2021), ECF 440 ...........21

Reply Br. for Appellants, *In Re Fairfield Sentry Ltd.*,
  No. 22-2101 (2d Cir. June 9, 2023), ECF 895 ....................17

# INTRODUCTION

These consolidated interlocutory appeals involve foreign bankruptcy representatives' efforts to obtain some measure of justice for innocent investors who suffered massive losses in the now-infamous Ponzi scheme orchestrated by Bernie Madoff. The Liquidators have brought adversary proceedings under Chapter 15 of the Bankruptcy Code, seeking to recover funds from sophisticated investors who managed to cash out before the Ponzi scheme collapsed (who thus received falsely inflated returns based on the principal of their fellow investors) and to equitably distribute those funds among the larger group of innocent investors.

In a related batch of appeals, the Liquidators are challenging the dismissal of the bulk of their claims across more than 200 adversary proceedings. Here, however, a smaller group of defendants ("Defendants") seek to wipe out the one set of claims that even the district court acknowledged should go forward: the Liquidators' foreign common law constructive trust claims ("Constructive Trust Claims"), which are claims that any party could bring outside of bankruptcy and are based on evidence that Defendants knew of Madoff's fraud before it was publicly uncovered and cashed out their investments knowing that they were receiving fraudulently inflated returns.

It is not surprising that even a court willing to dismiss the balance of the Liquidators' claims saw these claims differently; Defendants' arguments for reversal are exceedingly weak. Whatever can be said for limiting statutory avoidance powers

that only foreign liquidators possess, there is no coherent reason to deprive a foreign liquidator of a common law claim that the funds could have brought outside bankruptcy and that any non-liquidator could pursue under British Virgin Islands ("BVI") law.  Regardless of how it disposes of the broader consolidated appeals, this Court should affirm the denial of Defendants' motion to dismiss.

Defendants misread the relevant statutory scheme and mischaracterize the Liquidators' claims.  Defendants first contend that the Liquidators' Constructive Trust Claims against them are really "avoidance" claims covered by the Bankruptcy Code's securities safe harbor, 11 U.S.C. §546(e) ("Safe Harbor"), which applies in Chapter 15 cases through 11 U.S.C. §561(d).  *See* Defs.Br.19-27.  As the Supreme Court has explained, however, the Safe Harbor is a "limit[] on the exercise of" the specific statutory "avoiding powers" set forth in §§544, 545, 547, 548(a)(1)(B), and 548(b) of the Bankruptcy Code.  *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S.Ct. 883, 887-89, 893-94 (2018); *see* 11 U.S.C. §546(e).  But the Constructive Trust Claims do not depend on powers unique to the bankruptcy context; they are ordinary tort claims under the BVI law that anyone with standing could bring outside of bankruptcy.  The Safe Harbor thus has no application to them, as they do not proceed "under one of the substantive avoidance provisions" set forth in the Bankruptcy Code to which §546(e) refers.  *See Merit Mgmt.*, 138 S.Ct. at 893.  In all events, the Safe Harbor is doubly unhelpful to Defendants, as Defendants cannot deny that the

2

Constructive Trust Claims are grounded in actual fraudulent intent—and the Safe Harbor explicitly allows for unwinding of securities transactions made "with actual intent to hinder, delay, or defraud" creditors. *See* 11 U.S.C. §§546(e), 548(a)(1)(A).

Defendants cite various decisions holding that the Safe Harbor impliedly preempts state common law claims that mirror statutory avoidance actions. But none of those cases provides any support for Defendants' theory that the Liquidators' common law claims actually are covered by the terms of §546(e). Nor could they: The Safe Harbor plainly does not encompass common law claims. Indeed, if common law claims were actually barred by the statute's plain text, then Defendants' cases would have had no reason to conduct an *implied*-preemption analysis.

Implied preemption is thus the only option when it comes to common law claims and §546(e)'s Safe Harbor—but implied preemption is entirely off the table here for the most basic of reasons. Principles of implied preemption (i.e., obstacle, impossibility, and field preemption) are rooted in the American system of dual sovereignty, under which individuals and businesses are subject to federal law and state law concurrently. They govern the relationship between federal law and state law and help courts determine when the latter must give way to the former. Those federalism principles have no application to the law of a distinct, sovereign nation. That likely explains why Defendants do not meaningfully dispute the bankruptcy

3

court's holding that only express statutory language will displace foreign law that Congress has made applicable in a specific context.

Defendants argue instead that allowing a foreign common law claim to proceed where a similar state-law claim would be preempted somehow "elevate[s]" foreign law "above both state and federal law." Defs.Br.41. That argument fundamentally misunderstands the dynamic. Unlike state law, foreign law usually does not apply at all in the United States. When Congress goes out of its way to make clear that foreign law does apply in a particular context—as it has done with Chapter 15—that judgment must be respected, even if Congress has simultaneously evinced an intention for state law to give way. Thus, even if similar state-law claims would be impliedly preempted here, any such implied preemption would provide no warrant to countermand the whole thrust of Chapter 15 by depriving a foreign representative of a claim that BVI courts would allow to proceed and that any other BVI litigant could pursue against similarly situated defendants outside of bankruptcy. That conclusion does not "elevate[]" foreign law "above both state and federal law," *contra* Defs.Br.41; it simply respects the policy choice that Congress has made pursuant to its authority under Article I of the Constitution.

At bottom, Defendants have no persuasive theory that would allow them to "escape the consequences resulting from their knowledge that the redemption prices" at which they cashed out "were based on fictitious assets." SA.58 n.7 (*In re*

*Fairfield Sentry Ltd.*, 2020 WL 7345988, at \*2-3 & n.7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*")).  This Court should affirm the district court's denial of Defendants' motion to dismiss the Liquidators' Constructive Trust Claims, and allow those claims to proceed, regardless of how this Court resolves the Liquidators' separate consolidated appeals.

## ISSUE PRESENTED

Whether 11 U.S.C. §561(d), which "limit[s] avoidance powers" in a proceeding under Chapter 15 of the Bankruptcy Code "to the same extent as in a proceeding under [C]hapter 7 or 11," bars foreign liquidators from recovering funds for knowing misconduct in violation of British Virgin Islands common law.

## STATEMENT OF THE CASE AND FACTS

### A.    Legal Background

1. Chapters 7 and 11 of the Bankruptcy Code govern the liquidation and reorganization of U.S. companies under U.S. law.  In a proceeding under Chapter 7 or Chapter 11, a "trustee" oversees the administration of the bankruptcy.  *See* 11 U.S.C. §§701-03, 1104-06.

The Code gives the trustee special powers in Chapter 7 or Chapter 11 proceedings that do not exist outside of bankruptcy, authorizing them to "invalidate a limited category of transfers by the debtor or transfers of an interest of the debtor in property."  *Merit Mgmt.*, 138 S.Ct. at 887-88.  These extraordinary statutory powers are set forth in a series of Code provisions stating that a trustee "may avoid"

5

certain transfers, *see* 11 U.S.C. §§544, 545, 547, 548(a)(1), 548(b); *see also id.* §103(a) (Chapter 5 applies "in a case under [C]hapter 7, 11, 12, or 13"), and they are commonly referred to as "avoidance powers" (or "avoiding powers"). *See, e.g.*, *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1663 (2019); *Merit Mgmt.*, 138 S.Ct. at 887-89. "'[A]voiding power' … is a term of art referring to the right and power, unique to bankruptcy, to invalidate and unwind a debtor's voluntary or involuntary transaction." Avoiding Power, *Norton Bankr. L. & Prac. 3d Dict. of Bankr. Terms* §A160. For example, §547 permits a trustee to "avoid" certain "transfer[s] of an interest of the debtor in property" during a statutorily defined "preference period" immediately preceding the bankruptcy filing. 11 U.S.C. §547; *see, e.g.*, *Barnhill v. Johnson*, 503 U.S. 393, 396-400 (1992).

"Section 546 of the Code puts certain limits on the avoidance powers set forth" in the surrounding provisions. *Merit Mgmt.*, 138 S.Ct. at 894 (quoting *Fidelity Fin. Servs., Inc. v. Fink*, 522 U.S. 211, 217 (1998)). One of these limits is a carveout, or "safe harbor," for particular types of domestic transactions that are given qualified protection against the use of the trustee's statutory avoidance powers. *See* 11 U.S.C. §546(e). As relevant here, the Safe Harbor provides that "[n]otwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b)" of the Code, "the trustee may *not* avoid a transfer" that is a "settlement payment" "made by or to (or for the benefit of)" a "financial institution" "in connection with a securities contract." *Id.* (emphasis

6

added).  In other words, a trustee's statutory "avoidance powers" do not extend to certain payments made in connection with the sale or purchase of a security.

As noted, §546(e)'s Safe Harbor provides only a qualified exception from the trustee's statutory avoidance powers.  *See Merit Mgmt.*, 138 S.Ct. at 893 ("The very first clause—'Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title'—… indicates that §546(e) operates as an exception to the avoiding powers afforded to the trustee under the substantive avoidance provisions.").  The Safe Harbor does not extend, for instance, to avoidance actions under §548(a)(1)(A), which covers transactions made "with actual intent to hinder, delay, or defraud" creditors.  Thus, a trustee *may* seek to avoid settled securities transactions made with actual fraudulent intent.  *See* 11 U.S.C. §§546(e), 548(a)(1)(A).

2. While Chapters 7 and 11 of the Code govern domestic bankruptcy proceedings and the powers of domestic trustees, Chapter 15 addresses foreign bankruptcies and the powers of foreign bankruptcy representatives.

Under Chapter 15, a "foreign representative" may obtain "recognition of a foreign [bankruptcy] proceeding" in a U.S. court.  *Id.* §1515.  Once a U.S. court has recognized a foreign proceeding, the foreign representative may initiate adversary proceedings and "apply directly" to the U.S. court "for appropriate relief."  *Id.* §1509(b).  The U.S. court "may, at the request of the foreign representative, grant any appropriate relief," *id.* §1521(a), and "may provide additional assistance"

7

"consistent with the principles of comity," *id.* §1507.  Chapter 15 directs U.S. courts to "cooperate to the maximum extent possible with a foreign court or a foreign representative," *id.* §1525(a), although courts need not take any action that "would be manifestly contrary to the public policy of the United States," *id.* §1506.  *See Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 796 F.3d 520, 525 (5th Cir. 2015) ("'Central to Chapter 15 is comity' and the facilitation of cooperation between multiple nations." (quoting *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1043 (5th Cir. 2012)).

"Chapter 15 cases are generally intended to be supplementary to cases brought in the debtor's home country." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 679 (S.D.N.Y. 2011) (quoting 8 *Collier on Bankruptcy* ¶1501.01).  The court in the United States "acts as an adjunct or arm of a foreign bankruptcy court where the main proceedings are conducted." *Id.* at 678-79.  "The purpose is to maximize assistance to the foreign court conducting the main proceeding," *id.*, which typically entails the application of foreign law. *See, e.g.*, *In re Condor Ins. Ltd.*, 601 F.3d 319, 327 (5th Cir. 2010) ("Congress did not intend to restrict the powers of the U.S. court to apply the law of the country where the main proceeding pends.").

In addition to carrying forward the foreign representative's power to bring claims arising under foreign law, Chapter 15 also grants foreign representatives the power to bring U.S. statutory avoidance claims in certain circumstances. Specifically, Chapter 15 allows foreign representatives to initiate or participate as a

party-in-interest in domestic bankruptcy proceedings under Chapters 7 and 11, *see* 11 U.S.C. §§1511(a), 1512, and, when a foreign representative does so, Chapter 15 vests the foreign representative with the statutory avoidance powers of a domestic trustee, *see id.* §1523(a). In other words, if a foreign representative, acting under the authority of Chapter 15, initiates or intervenes in a proceeding under Chapter 7 or 11, then the foreign representative can bring statutory avoidance claims under 11 U.S.C. §§544, 545, 547, 548(a)(1), 548(b), just like a domestic trustee.

3. In the same amendment that added Chapter 15 to the Bankruptcy Code, Congress enacted 11 U.S.C. §561(d). As relevant here, §561(d) provides that "[a]ny provisions" of the Code "relating to securities contracts" "shall apply in a case under [C]hapter 15" "to limit avoidance powers to the same extent as in a proceeding under [C]hapter 7 or 11." Thus, the Safe Harbor's limitation on the avoidance powers conferred in §§544, 545, 547, and 548 of the Bankruptcy Code applies "to the same extent" in proceedings under Chapter 15.

### B. Factual Background

Bernie Madoff ran the largest Ponzi scheme in history. Holding out his company, Bernard L. Madoff Investment Securities LLC ("BLMIS"), as a legitimate investment fund, and promising handsome returns, Madoff raised billions of dollars from investors. But instead of investing the capital he raised (as promised), Madoff simply deposited most of it in bank accounts and then falsified trading records to

create the illusion of large investment returns. When investors sought to redeem their investments and collect their "gains," BLMIS paid the redemptions using money raised from other investors. Inevitably, requested redemptions eventually exceeded the amount of money raised from investors, and the scheme collapsed in 2008.

Much of the money BLMIS raised came from so-called "feeder funds"—investment funds that pool money from many investors and then place it in a master fund on their behalf. *See* A.466. Fairfield Sentry, Ltd. ("Sentry"), based in the British Virgin Islands, sold shares to foreign investors and invested virtually all of the proceeds with BLMIS. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *2 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"). Fairfield Sigma Ltd. and Fairfield Lambda Ltd. were "funds of funds" that invested all their assets in Sentry. *See id.* "The investors could redeem their shares at will, and the redemption payment amounts were based on a calculation of net asset value ('NAV') per share which depended, for the most part, on the value of Sentry's investment with BLMIS." *Id.*

Investors who redeemed their shares before Madoff's Ponzi scheme was uncovered recouped not only their principal, but also substantial (and illusory) gains funded by their fellow investors. While some of those who cashed out at the right time may have just gotten lucky, the allegations in the complaint make clear that *Defendants'* good timing was not down to luck. Defendants are sophisticated

entities that "had actual or constructive knowledge" that "the redemption prices were based on fictitious assets"—"and, hence, the redemption prices were inflated"—when they redeemed their shares. SA.58-59 & n.7 (*Fairfield III*, 2020 WL 7345988, at \*2-3 & n.7); *see* A.490-92 (¶¶71-81 of representative complaint). In contrast, many innocent investors lacked such knowledge and did not cash out early, and they ultimately saw substantial investments on which they were depending wiped out when the Ponzi scheme came to light.

### C. Procedural Background

After the Ponzi scheme collapsed and the extent of the fraud was revealed, the Funds entered liquidation proceedings under BVI law. Appellees (or their predecessors) were appointed as Liquidators, responsible for recovering and distributing assets for investors in the Funds. Among other things, the Liquidators sought to recover fraudulently inflated payments taken by entities such as Defendants and to equitably distribute the proceeds among the larger group of innocent investors who lost nearly everything.

In late 2009 and early 2010, the Liquidators filed claims in BVI court under BVI law seeking to recover some of those payments. *See Fairfield I*, 2018 WL 3756343, at \*2. Because a large amount of the fraudulently inflated payments—approximately $6 billion—went to investors who had consented to suit in New York, the Liquidators also filed Chapter 15 suits in U.S. bankruptcy court, seeking to obtain

recognition of the BVI liquidation proceedings as "foreign main proceedings." *Id.* The bankruptcy court granted recognition, and the Liquidators brought approximately 300 adversary proceedings asserting BVI statutory avoidance claims under §§245 to 246 of the BVI Insolvency Act, as well as BVI common law claims for unjust enrichment, mistaken payment, money had and received, and constructive trust. *See id.* at *6.

In a series of decisions, the bankruptcy court dismissed many (but not all) of the Liquidators' claims. *See In re Fairfield Sentry Ltd.*, 596 B.R. 275, 295, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); SA.74-76 (*Fairfield III*, 2020 WL 7345988, at *9-10). The Liquidators timely appealed those dismissals to the district court, which affirmed. The Liquidators' consolidated appeals from that decision are currently pending before this Court. *See In re Fairfield Sentry Ltd.*, No. 22-2101 (Lead) (2d Cir. appeal filed 2022).

One set of claims survived motion-to-dismiss practice: the Liquidators' BVI Constructive Trust Claims against parties who allegedly knew of the Madoff fraud when they redeemed their shares, i.e., the Defendants here, which cover roughly one-third of the total amount the Liquidators sought to recover. Defendants moved for reconsideration of that denial, which the bankruptcy court denied. *See* SA.89-98 (*In re Fairfield Sentry Ltd.*, 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) ("*Fairfield IV*"). Defendants then petitioned the district court for interlocutory

review, A.2123, and the district court certified, *see* SA.40 (*Fairfield Sentry Ltd. v. Citibank, N.A. London*, 630 F.Supp.3d 463, 494 (S.D.N.Y. 2022) ("*Fairfield V*")). This Court has now granted Defendants' petitions for interlocutory review, and agreed to hear the present set of consolidated interlocutory appeals, which concern the denial of Defendants' motion to dismiss the Constructive Trust Claims, in tandem with the Liquidators' appeals as of right (No. 22-2101). *See* A.3351-52.

## SUMMARY OF ARGUMENT

**I.A.** In domestic bankruptcy proceedings under Chapter 7 or 11, Congress has "create[d] both a system for avoiding transfers and a safe harbor from avoidance." *Merit Mgmt.*, 138 S.Ct. at 894. Sections 544, 545, 547, and 548 of the Bankruptcy Code give a trustee statutory "avoidance powers" that the trustee may use to "avoid" (i.e., invalidate) certain transfers. But the Safe Harbor of §546(e) limits the scope of these statutory powers, providing that "the trustee may not avoid" settled securities transactions unless the transaction was made with fraudulent intent.

If the Liquidators prevail in their own appeal, then Defendants' appeal here is foreclosed. But even assuming that the Safe Harbor applies extraterritorially through 11 U.S.C. §561(d), *but see* Br. for Appellants 51-73, *In Re Fairfield Sentry Ltd.*, No. 22-2101 (2d Cir. Jan. 27, 2023), ECF 227 ("Liqs.' 22-2101 Br."), the furthest the statutory limitation on statutory "avoidance powers" could reach is foreign *statutory* avoidance powers that exist only in bankruptcy. The Safe Harbor is thus

13

wholly inapplicable to foreign *common law* claims alleging wrongful conduct that could be brought by any BVI litigant wholly independent of any insolvency proceeding. Accordingly, the lower courts correctly ruled that the Liquidators' Constructive Trust Claims, which turn on Defendants' redemption of shares with the knowledge that they were fraudulently inflated, survive a motion to dismiss.

Defendants' *ipse dixit* that the Constructive Trust Claims "are … 'avoidance' claims," *e.g.*, Defs.Br.27, finds no support in the text or the structure of the Bankruptcy Code. As the Supreme Court has explained, "§546(e) operates as an exception to the avoiding powers afforded to the trustee under the substantive avoidance provisions"; it is a statutory "[l]imitation" on the specific statutory powers conferred in the adjacent sections of the Code. *Merit Mgmt.*, 138 S.Ct. at 893.

Section 546(e)'s Safe Harbor is not an independent bar on "any action" that "seek[s] to set something aside," including "non-Bankruptcy Code claims" that any litigant could pursue even outside of bankruptcy. *Contra* Defs.Br.19-20. Section 561(d)'s "limit [on] avoidance powers" thus simply does not reach the Liquidators' foreign common law claims, which do not depend on any power that the Bankruptcy Code confers on trustees. Tellingly, Defendants fail to identify a single case that adopts their interpretation of "avoidance"—presumably because none exists.

**I.B.** The lower courts also correctly held that 11 U.S.C. §561(d) does not impliedly preempt the Constructive Trust Claims. Defendants' argument fails at the

threshold because foreign law is not subject to implied preemption. Preemption governs the relationship between federal law and state law in the American system of dual sovereignty. That federalism-specific doctrine is not applicable to foreign law. In all events, Defendants' argument fails twice over because Congress' clear intent is that foreign law should be respected in this context. Chapter 15 goes out of its way to *facilitate* the enforcement of foreign law under circumstances like this this. The Bankruptcy Code directs U.S. courts to assist foreign representatives and foreign courts by applying foreign law in Chapter 15 proceedings. Given this directive, foreign law presumptively applies in such proceedings "absent express statutory language" to the contrary. SA.76 (*Fairfield III*, 2020 WL 7345988, at *10).

Defendants' contention that the lower courts' analysis "elevated" foreign law "above both state and federal law" is without merit. *Contra* Defs.Br.41. Neither court elevated foreign law over anything. Instead, having correctly recognized that the text of the Safe Harbor does not extend to foreign common law claims (meaning that any form of *express* displacement is off the table), the lower courts simply recognized that notions of implied preemption were inapplicable to foreign law.

**II.** Even if an implied-preemption analysis were somehow appropriate, it would not bar the Liquidators' claims. Congress enacted Chapter 15 "to facilitate cooperation between U.S. courts and foreign bankruptcy proceedings." *Condor Ins.*, 601 F.3d at 329; *see* 11 U.S.C. §1501 (legislatively enacted statement of purpose).

15

Chapter 15 contemplates that U.S. courts will facilitate foreign bankruptcies by giving effect to foreign law—in hopes that foreign countries will offer reciprocal assistance. And it is undisputed that BVI courts would *not* apply the Safe Harbor (or anything like it) to bar the Constructive Trust Claims. Thus, the principles of comity and reciprocity that animate Chapter 15 cut sharply in favor of allowing the Constructive Trust Claims to move forward.

There is no merit to Defendants' contention that this would frustrate federal law. *Contra* Defs.Br.29-36. While the Safe Harbor reflects Congress' goal to protect the domestic securities market from the effects of a major bankruptcy, Chapter 15 reflects Congress' goal of promoting comity and reciprocity in cross-border insolvencies. To the extent there is tension between Congress' objective of protecting settled securities transactions and Congress' objective of promoting comity and reciprocity in cross-border insolvency proceedings, the former should not be permitted to run roughshod over the latter. Defendants' approach would do little to further Congress' interest in protecting U.S. securities markets, as such claims could still be pursued in foreign courts. And it would directly thwart the central purpose of Chapter 15 by blocking foreign liquidators from pursuing foreign law claims that the foreign court overseeing the main proceeding would permit them to pursue. That, in turn, would give foreign courts every reason to refuse to assist American courts with proceedings—undercutting Chapter 15's entire *raison d'être*.

16

## ARGUMENT

**I.     The Courts Below Correctly Held That The Bankruptcy Code Safe Harbor Does Not Bar The Liquidators' BVI Constructive Trust Claims.**

As explained in the Liquidators' briefing in the related consolidated appeals, the Safe Harbor does not apply extraterritorially through §561(d) to bar claims targeting foreign transactions under foreign law.  *See* Liqs.' 22-2101 Br. 51-73; Reply Br. for Appellants 15-32, *In Re Fairfield Sentry Ltd.*, No. 22-2101 (2d Cir. June 9, 2023), ECF 895 ("Liqs.' 22-2101 Reply").  Section 546(e) limits domestic trustees only when it comes to domestic transfers in order to protect domestic securities markets.  And §561(d) does no more than extend the same domestic limits to foreign liquidators, without imposing any limits on foreign liquidators targeting foreign transfers under foreign law.  Section 561(d) is thus inapplicable here by its terms—and cannot overcome the presumption against extraterritoriality in all events.  After all, the plain text of §561(d) says nothing whatsoever about "foreign" or "extraterritorial" application, let alone limiting foreign liquidators' authority under foreign law (especially where that authority has no direct analog to the powers of a domestic trustee).  Because §561(d) "gives no clear indication of an extraterritorial application" that would extend §546(e) to foreign avoidance claims, "it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).

If this Court reverses the district court on the extraterritoriality issue, that necessarily would resolve the present appeals in the Liquidators' favor.  But even

assuming *arguendo* that the Safe Harbor applies extraterritorially, it would not help Defendants here. The Safe Harbor is only a "limit [on] avoidance powers," which are entirely creatures of statute. 11 U.S.C. §561(d); *see id.* §546(e). It is a statutory limit on the extraordinary statutory avoidance powers granted to a trustee in bankruptcy. It does not preclude common law claims that redress wrongful conduct that any BVI litigant could pursue outside of bankruptcy. Thus, at a bare minimum, the Liquidators' Constructive Trust Claims against Defendants should be allowed to proceed.

### A. The Liquidators' Constructive Trust Claims Against Defendants Are Not "Avoidance Claims."

1. Defendants spill considerable ink trying to make the case that the Liquidators' constructive trust claims against them amount to an avoidance action. That argument is forfeited and wrong, as explained below. It also misses the point. The Safe Harbor does not speak in terms of avoidance actions per se; it imposes limits on a trustee's ability to avail herself of the powers conferred by "sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title." 11 U.S.C. §546(e). Put differently, the Safe Harbor applies only insofar as a trustee seeks to avoid transactions "under one of the substantive avoidance provisions" to which §546(e) explicitly refers. *Merit. Mgmt.*, 138 S.Ct. at 892-93. But the Liquidators' BVI-law claims do not depend on any bankruptcy-specific power, let alone any power specifically conferred

in the Bankruptcy Code (or five enumerated sections thereof). They are common law claims under the law of an entirely different sovereign.

The Safe Harbor therefore has no application here. As the Supreme Court explained in *Merit Management*, "the text makes clear that the starting point for the §546(e) inquiry is the substantive avoiding power under the provisions expressly listed in the 'notwithstanding' clause" (i.e., 11 U.S.C. §§544, 545, 547, 548(a)(1)(B), 548(b)) "and, consequently, the transfer that the trustee seeks to avoid as an exercise of those powers." *Id.* The Liquidators do not seek to "exercise" any "of *those* powers." Accordingly, even if one (mistakenly) characterized the Liquidators' Constructive Trust Claims as "like" avoidance claims, they are not the type of Chapter-5-based avoidance claims to which the Safe Harbor applies.

2. In all events, the Constructive Trust Claims are plainly not avoidance claims in the sense of the Bankruptcy Code. While courts may sometimes use the term "avoidance claim" (or "avoiding claim") colloquially to refer to any claim that has the effect of unwinding a transfer, §546(e) is not all-encompassing. In this context, "avoiding power" is a term of art that refers to the extraordinary statutory powers conferred on a trustee in domestic bankruptcy proceedings by §§544, 545, 547, and 548 of the Bankruptcy Code. *See, e.g.*, *Merit Mgmt.*, 138 S.Ct. at 887-89, 893-94; *see supra* pp.5-6. Each of those provisions states that the trustee "may avoid" certain types of transfers. *See Merit Mgmt.*, 138 S.Ct. at 894. The Safe Harbor places a

19

limit on some, but not all, of those specific statutory authorities, by providing that "[n]otwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b)[,] … the trustee may *not* avoid" settled securities transactions, "except [intentionally fraudulent transfers] under section 548(a)(1)(A)." 11 U.S.C. §546(e) (emphasis added). Thus, the Code's avoidance provisions and the Safe Harbor are "two sides of the same coin." *Merit Mgmt.*, 138 S.Ct. at 894.

The Safe Harbor is thus not some freestanding immunity or restriction on a trustee's ability to pursue actions for the benefit of creditors. Instead, it "operates as an exception to the avoiding powers afforded to the trustee" *in the adjacent statutory provisions*. *Id.* at 893. The other subsections of §546 reinforce that conclusion by imposing limitations on the specific statutory avoidance powers expressly granted elsewhere in the Bankruptcy Code. *See id.* at 894 (looking to "statutory structure" in interpreting §546(e)). Most obviously, §546(a) sets forth the time limits for bringing "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title." 11 U.S.C. §546(a). The next three subsections narrow the field even further, setting forth rules of application in specific contexts for "[t]he rights and powers of a trustee under sections 544, 545, and 549" (subsection (b)) and "sections 544(a), 545, 547, and 549" (subsections (c) and (d)), respectively. *Id.* §546(b)(1), (c)(1).

Simply put, "'Section 546 of the Code puts certain limits on the avoidance powers set forth' … in Chapter 5 of the Code." *Merit Mgmt.*, 138 S.Ct. at 894

20

(quoting *Fidelity*, 522 U.S. at 217). Defendants' argument that the Safe Harbor covers foreign common law claims that do not depend on any powers enumerated in Chapter 5 of the Code, and that could be brought under BVI law by any plaintiff with standing even outside of the bankruptcy context, "is nothing more than an attack on the text of the statute," *id.* at 897, which by its terms imposes a limitation solely on statutory avoidance claims brought by a trustee pursuant to the specific statutory avoidance powers to which §546(e) explicitly refers. *See* SA.72 (*Fairfield III*, 2020 WL 7345988, at *8); *see also, e.g.*, *In re Quorum Health Corp.*, 2023 WL 2552399, at *11-12 (Bankr. D. Del. Mar. 16, 2023) (rejecting argument that Safe Harbor operates to bar "claims not expressly embraced by section 546(e)"); *In re Lehman Bros. Holdings Inc.*, 469 B.R. 415, 449-50 & n.19 (Bankr. S.D.N.Y. 2012) (same).[1]

That dooms Defendants' position. Even assuming that §561(d)'s "limit[ation]" on "avoidance powers" covers not only statutory avoidance claims under the Bankruptcy Code, but also "analogous" powers granted to foreign liquidators under foreign law, *but see* Liqs.' 22-2101 Br. 51-73, §561(d) cannot possibly reach foreign common law claims such as the Constructive Trust Claims.

---

[1] The Liquidators have never "concede[d] that the Safe Harbor applies 'regardless of the cause of action involved.'" *Contra* Defs.Br.42 (quoting Opening Br. for Second-Round Appeal at 44, *In re Fairfield Sentry Ltd.*, No. 19-cv-3911 (S.D.N.Y. Jul. 21, 2021), ECF 440). Instead, the Liquidators have argued that the Safe Harbor *does not apply* to intentionally fraudulent transfers, even if §548(a)(1)(A) is not invoked. *See* Opening Br. for Second-Round Appeal at 42-45.

The Constructive Trust Claims are not statutory avoidance claims that only a trustee or liquidator could pursue. Avoidance claims "belong[] to the trustee, not to the [debtor]." *In re Bethlehem Steel Corp.*, 390 B.R. 784, 790-91 (Bankr. S.D.N.Y. 2008) (quoting *Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1977)). In stark contrast, the Constructive Trust Claims "belong[ed] to the debtor" before any liquidation proceeding commenced and are wholly "derivative of [the debtor's] rights and interests." *See In re Worldcom, Inc.*, 401 B.R. 637, 645-47 (Bankr. S.D.N.Y. 2009). Furthermore, whereas the Safe Harbor by its terms applies only to "statutory causes of action" that "only arise upon the filing of a [bankruptcy] petition," *id.* at 645, the Liquidators' common law Constructive Trust Claims "exist independently of the bankruptcy" and became property of the estate only upon the filing of a bankruptcy petition, *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 683-84 (S.D.N.Y. 2011). Nor do the Constructive Trust Claims depend on powers conferred by the Bankruptcy Code (or any other statute); they are common law claims that could be pursued by any BVI litigant in ordinary civil court in the absence of any bankruptcy. SA.95-96 (*Fairfield IV*, 2021 WL 771677, at *3); *see In re Bankr. Estate of Norske Skogindustrier ASA*, 629 B.R. 717, 757 n.34 (Bankr. S.D.N.Y. 2021) (finding the Safe Harbor "irrelevant" to Norwegian-law claims concerning pre-bankruptcy transactions, because they "are not avoidance claims").

In sum, the bankruptcy court correctly held that §546(e)'s Safe Harbor does not apply to the Liquidators' Constructive Trust Claims against Defendants.

3. Defendants' contrary contentions blink reality. Defendants begin by urging the Court to construe "avoid" in a vacuum, citing non-bankruptcy dictionary definitions for the proposition that "avoid" is "synonymous[] with" words like "undo," "annul," and "cancel." *See* Defs.Br.20 & n.8. This effort to define "avoiding powers" in the abstract is doubly unavailing. First, the relevant question here turns not on the definition of that term in the abstract, but on the scope of §546(e)—and §546(e) by its terms is a limitation only upon the specific statutory avoidance powers granted in Chapter 5 of the Code. Second, "avoiding power" is "a term of art" in this context limited to *statutory* avoidance powers. *See* Avoiding Power, *Norton Bankr. L. & Prac. 3d Dict. of Bankr. Terms* §A160; *see supra* pp.5-6. So even if §546(e) could be extended to reach arguably comparable foreign statutory avoidance powers in the Chapter 15 context, that is as far as it could go.

Defendants next assert that the Safe Harbor "broadly prohibit[s]" "any action" that would "undo" a covered securities transaction, except for intentional fraudulent transfers under §548(a)(1)(A). Defs.Br.19-20, 42-43. But besides being completely unmoored from the text and context of §546(e), that assertion flies in the face of the Supreme Court's interpretation of §§544 to 553 in cases such as *Merit Management*. As explained, the Safe Harbor is a limitation on *the specific* "avoidance powers" set

23

forth in §§544-53; it is not some freestanding immunity and does not "preemptively block every other legal theory" made in relation to a securities transaction. *Lehman Bros.*, 469 B.R. at 450; *see Merit Mgmt.*, 138 S.Ct. at 887-89, 893-94.

Defendants' suggestion that the bankruptcy court invented an arbitrary "rule that a claim must have certain elements to fall within the scope of the Safe Harbor," Defs.Br.42, is even less persuasive. The court simply looked to the elements of the Liquidators' claims to assess whether they "resemble" domestic avoidance claims governed by 11 U.S.C. §§544-53. *See* SA.65-66 (*Fairfield III*, 2020 WL 7345988, at *5). And while it concluded that the elements of the Liquidators' *statutory* claims under the BVI Insolvency Act are "similar" to the elements of avoidance claims under 11 U.S.C. §§544(b)(1), 547(b), and 548(a)(1)(B), *see* SA.65-66 (*Fairfield III*, 2020 WL 7345988, at *5), the court determined (correctly) that the elements of the *Constructive Trust Claims* are markedly different from the elements of an avoidance claim, SA.96 (*Fairfield IV*, 2021 WL 771677, at *3); *see also* SA.39-40 (*Fairfield V*, 630 F.Supp.3d at 494) (rejecting argument that Liquidators' foreign common law claims are "sufficiently similar to the BVI Avoidance Claims to be barred by §546(e)"). At the most basic level, insolvency is not an element "of the Constructive Trust Claims," but obviously is an element of an avoidance action under Chapter 5 of the Code (and a claim under the BVI Insolvency Act). SA.96 (*Fairfield IV*, 2021 WL 771677, at *3). And whereas the Constructive Trust Claims require a showing

24

of knowledge on the part of Defendants that the value of the assets they received was inflated, *see* SA.96 (*Fairfield IV*, 2021 WL 771677, at *3) (citing *El Ajou v. Dollar Land Holdings Ltd.* [1994] 2 All E.R. 685, 700), knowledge is not an element of any of the avoidance actions created by Chapter 5. *See, e.g.*, 11 U.S.C. §544(a) (trustee's statutory avoidance powers over voidable transfers apply "without regard to any knowledge of the trustee or of any creditor").

Defendants have no answer for the unassailable reality that the Constructive Trust Claims "proceed on different theories and different proof" than avoidance claims under the Bankruptcy Code. SA.96 (*Fairfield IV*, 2021 WL 771677, at *3). So they try to change the subject. But their contention that "[w]hether a claim is an avoidance claim" turns on "the remedy sought," Defs.Br.20-21, is untenable. To be sure, §§544, 547, and 548 empower a trustee to bring actions with "starkly different elements." Defs.Br. 21. But what makes such actions "avoidance claims" is the fact that they are brought *pursuant to the trustee's statutorily enumerated* "*avoidance powers.*" *See, e.g.*, *Merit Mgmt.*, 138 S.Ct. at 887-89, 893-94. And while all statutory avoidance claims "seek[] to set something aside," Defs.Br.20-21, it does not logically follow that non-statutory claims seeking a similar remedy are therefore "avoidance claims." *Contra* Defs.Br.22-23. Indeed, numerous courts have held that the Safe Harbor's "plain language" does not bar trustees from asserting common law claims—including claims for conversion, constructive trust, unjust enrichment, and

25

illegal dividend—even if the claims could be thought of as invalidating a securities transaction. *See, e.g.*, *Lehman Bros.*, 469 B.R. at 423, 449-51 & n.19, 456-60 (Ex. A at 10-17); *In re Quorum Health Corp.*, 2023 WL 2552399, at *12 (Bankr. D. Del. Mar. 16, 2023); *cf. Schwartz v. Pierucci*, 60 B.R. 397, 399 (E.D. Pa. 1986) (the "limitation on the trustee's avoiding power pursuant to" §546(a) was "inapplicable" to claims "brought pursuant to state law, not under the trustee's avoiding powers").[2]

To the extent courts have "applied the Safe Harbor" to "common law claims," Defs.Br.22, they have done so *not* on the theory that the claims are actually precluded by the text of §546(e), but exclusively under an implied-preemption theory—a reality that Defendants assiduously ignore for the first 11 pages of their argument. *See* Defs.Br.19, 22 (citing *In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 81, 84 (2d Cir. 2019)); *In re Nine West LBO Sec. Litig.*, 482 F.Supp.3d 187, 207-08 (S.D.N.Y. 2020)); *Contemp. Indus. Corp. v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009); *In re Hechinger Inv. Co. of Delaware*, 274 B.R. 71, 96, 98 (D. Del. 2002); *AP Servs. LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012)). Those preemption cases—which

---

[2] Perhaps recognizing that their unprecedented interpretation of "avoidance" is vastly overbroad, Defendants subsequently attempt to cabin it by suggesting that some constructive trust claims and claims "seeking damages for a tort" do not "constitute avoidance claims." Defs.Br.25-26. But neither concession does anything to address the fatal flaw in Defendants' theory, i.e., that the Safe Harbor is only a limitation on statutory claims brought under §§544, 545, 547, and 548, and that it does not restrict a trustee's power to bring common law claims.

26

consider "the object of a given [state-law] claim," Defs.Br.22, in assessing whether allowing the claim to proceed would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Tribune Co.*, 946 F.3d at 81 (quoting *Hillman v. Maretta*, 569 U.S. 483, 490 (2013))—have no application here, as explained below. *See infra* pp.32-39. In all events, none of them provides any support for the theory that the Liquidators' common law claims are covered by the terms of §546(e). *Contra* Defs.Br.19, 22, 27, 42. In fact, they make clear that the "plain terms" of the Safe Harbor's limitation on avoidance powers *do not encompass common law claims*. After all, if common law claims were actually barred by the statute's plain text, then those courts would have had no reason to conduct an *implied*-preemption analysis. *See Tribune Co.*, 946 F.3d at 97; *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, 892 F.Supp.2d 805, 825 (N.D. Tex. 2012).

Defendants' contention that the Liquidators' claims "mirror the *theory* of a classic avoidance claim" fares no better. *See* Defs.Br.23-25. As Defendants observe, the Liquidators seek to recover redemption payments made to Defendants and to equitably redistribute the funds among all the Funds' creditors. But that just describes the function of a liquidator; it does not describe the theory of liability underlying the Constructive Trust Claims. The Liquidators' theory is that Defendants *engaged in wrongful conduct* because they had actual or constructive knowledge of Madoff's fraud when they accepted inflated redemption payments.

27

*See* SA.58-59.  That is a standard theory of recovery that any BVI litigant could pursue and a far cry from the "classic avoidance claim[]," *Lehman Bros.*, 469 B.R. at 451, as it "do[es] not hinge on whether [the Funds were] insolvent at the time of the transfers"[3] or on "whether the transfers were made within the preference period"; instead, it "focus[es] on … whether [Defendants] acted wrongfully," *id.* at 457 (court's Exhibit A summarizing claims and arguments) (accepting argument that state-law constructive trust claims were not preempted by the Safe Harbor).  The mere fact that the Liquidators' Constructive Trust Claims seek "a money judgment for the amount of the redemption payments" from Defendants does not somehow transform them into avoidance claims limited by the Safe Harbor.  SA.96 (*Fairfield IV*, 2021 WL 771677, at *3); *accord Lehman Bros.*, 469 B.R. at 456-57 (court's Exhibit A).  To the contrary, the Safe Harbor is a limit on the extraordinary statutory powers conferred *on the trustee alone*.  It is not designed to hamstring the trustee when every other BVI litigant could proceed or give Defendants an extraordinary

---

[3] The "Funds' insolvency" is not "at the foundation of" the Constructive Trust Claims.  *Contra* Defs.Br.26.  To the contrary, "insolvency is an element of the BVI Avoidance Claims but not the Constructive Trust Claims," SA.96 (*Fairfield IV*, 2021 WL 771677, at *3), as explained above, *see supra* p.24.  As for Defendants' assertion that the Liquidators' unjust enrichment claims "rel[y] on the funds entering liquidation," Defs.Br.26, that is totally beside the point, as those claims *are not at issue here*.  *See* Defs.Br.3 (explaining that this interlocutory appeal concerns only the Constructive Trust Claims, not the Liquidators' separate unjust enrichment claims).

immunity for misconduct that could be redressed by the liquidated entity if the fraud had been less devastating and the Funds had not been forced into liquidation.

4. In addition to being meritless, Defendants' assertion that the Liquidators' Constructive Trust Claims "are … 'avoidance' claims," Defs.Br.27, is forfeited. Defendants did not "argue[] that the Constructive Trust Claims *were* avoidance claims" in their motion to dismiss; they raised the argument for the first time in their motion for reconsideration. SA.95 (*Fairfield IV*, 2021 WL 771677, at *3). Defendants' failure to timely assert this argument is perhaps understandable, as they concede that "neither the Second Circuit nor any other court" has ever held a foreign common law claim to be an "avoidance claim" for purposes of §546(e)'s Safe Harbor. A.2142. In all events, it obviates the need for this Court to consider the argument. "As a general rule, [this Court] will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration." *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 83 (2d Cir. 2023) (quotation marks omitted). Defendants give "no persuasive excuse" for making this argument too late, *id.*, presumably because there is none. Indeed, it is not hard to understand why this argument did not make the initial cut: It has no merit, as explained at length above. *See supra* pp.19-29.

5. Defendants' arguments that 11 U.S.C. §561(d) independently bars the Constructive Trust Claims are weaker still. *See* Defs.Br.27-28. Defendants assert

that §561(d)'s "language preventing provisions of [securities] contracts from being 'avoided,' 'stayed,' or 'otherwise limited' … prohibits the Liquidators from bringing a broad range of claims—including common law claims—that would set aside transfers that the Funds were otherwise contractually obligated to make." Defs.Br.28. This argument has been forfeited several times over; Defendants did not raise it in their initial motion to dismiss before the bankruptcy court, their motion for reconsideration, *or* their subsequent briefing before the district court. *See* SA.39-43, SA.74-76, SA.95-98. Defendants are thus barred from raising it now by the "well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994); *see also, e.g.*, *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) (A litigant "waives [an] argument" for purposes of appellate review "by failing to present it below."); *In re McKenna*, 238 F.3d 186, 187 (2d Cir. 2001), as amended (May 1, 2001) (holding that a party's "failure to raise its argument … at the bankruptcy court level and the district court level constitutes waiver"). Moreover, this argument is not properly before the Court, because Defendants failed to raise it in their petition for interlocutory review. *See* A2655-58, A2662-66.

In any event, the argument is meritless. The lone authority Defendants offer in support of their long-tardy interpretation of §561(d) is *In re Lehman Brothers Holdings Inc.*, 970 F.3d 91 (2d Cir. 2020)—a case that does not even mention

§561(d).   There, the plaintiff argued that certain contractual provisions were unenforceable under 11 U.S.C. §365(e), which establishes a general rule prohibiting "*ipso facto* clauses," i.e., "clauses that modify a debtor's contractual right solely because it petitioned for bankruptcy."  *Lehman Bros.*, 970 F.3d at 97.  This Court rejected that argument, holding that the contractual provisions were enforceable under §560, which "creates a safe harbor for the termination and liquidation of swap agreements, exempting them" from §365(e)'s general rule against *ipso facto* clauses.  *Id.* at 98-99.  Because the provisions were enforceable, the plaintiff had no right to any payments under the contracts.  *Id.* at 97, 105.  And, the court went on to explain, the plaintiff's state-law causes of action likewise failed, because they "require[d] [the plaintiff] to allege plausibly that it was entitled to the payments."  *Id.* at 105.

To describe that case is to distinguish it.  The Liquidators' Constructive Trust Claims do not "rise and fall with the disposition of [any] bankruptcy-law claims," as the state-law claims did in *Lehman Brothers*.  *Id.*  To the contrary, the Liquidators allege wrongful conduct "independent[] of the bankruptcy"—namely, that Defendants accepted payments they knew had been fraudulently inflated.  *See In re Fairfield Sentry*, 458 B.R. at 683-84; SA.58-59; A.490-92.  If that were not enough, Defendants' attempt to analogize §560 to §561(d) goes nowhere.  Section 561(d) is not a "safe harbor" at all; it simply makes Bankruptcy Code provisions "relating to securities contracts" applicable in Chapter 15 cases involving recognized foreign

31

bankruptcies. *Contra* Defs.Br.27-28. Ultimately, Defendants' reliance on *Lehman Brothers* does nothing but underscore the utter dearth of support for their position.

Finally, Defendants assert that §561(d) "precludes" the Liquidators "from 'avoid[ing]' a 'transfer' 'to the same extent' that a domestic bankruptcy trustee would be precluded." Defs.Br.28-29 (quoting 11 U.S.C. §561(d)). Like the Safe Harbor itself, however, §561(d) is only a "limit[ation]" on statutory "avoidance powers." 11 U.S.C. §561(d) ("Any provisions of this title relating to securities contracts [including §546(e)] … shall apply in a case under chapter 15 … *to limit avoidance powers* to the same extent as in a proceeding under chapter 7 or 11 of this title." (emphasis added)). The simple fact that the pursuit of foreign common law claims is not the exercise of "avoidance powers"—as every court to consider the question has held—is thus fatal to this argument as well.

### B. Implied-Preemption Principles Do Not Apply to Foreign Common Law Claims.

Although the plain text of the Safe Harbor does not bar trustees from bringing common law claims, this Court has held that §546(e) impliedly preempts certain state common law claims in some circumstances. *See Tribune Co.*, 946 F.3d at 90. But Defendants can garner no support from implied-preemption principles. As both the district court and the bankruptcy court correctly recognized, the implied-preemption doctrine has no application here for a simple reason: Implied preemption is entirely an outgrowth of the American system of dual sovereignty and the unique

32

relationship between federal law and state law under the Constitution. Implied preemption doctrines thus "do[] not apply to foreign law claims," period. SA.97 (*Fairfield IV*, 2021 WL 771677, at *3); *accord* SA.36, 40 (*Fairfield V*, 630 F.Supp.3d at 492-93, 494); SA.76 (*Fairfield III*, 2020 WL 7345988, at *10); *Norske Skogindustrier*, 629 B.R. at 762 ("[P]reemption is not applicable to foreign law claims."); *Al-Kurdi v. United States*, 25 Cl. Ct. 599, 601 n.3 (1992) ("The Supremacy clause applies to states and is inapplicable to considerations of federal law versus foreign law."). That alone suffices to defeat Defendants' preemption argument.

1. Chapter 15 of the Bankruptcy Code contemplates that U.S. courts will apply foreign law, including foreign common law, when "act[ing] as an adjunct or arm of a foreign bankruptcy court." *In re Fairfield Sentry*, 458 B.R. at 678-79; *accord Condor Ins.*, 601 F.3d at 327-29 (U.S. courts generally apply foreign law in ancillary proceedings under Chapter 15). And as Defendants have acknowledged, "all the claims" in this Chapter 15 case "arise under foreign law." Appellees' Br. 45, *In re Fairfield Sentry Ltd.*, No. 22-2101 (2d Cir. Jan. 27, 2023), ECF 661 ("Defs.' 22-2101 Br."). In that context—i.e., where Congress has provided a forum for claims under foreign law—only "express statutory language" will override otherwise applicable foreign law. SA.76 (*Fairfield III*, 2020 WL 7345988, at *10).

Defendants do not cite a single case countenancing a different approach. That is because none exists. Every court decision of which the Liquidators are aware is

consistent with the lower courts' opinions. *See, e.g., LaSala v. Bordier et Cie*, 519 F.3d 121, 139 (3d Cir. 2008) (no implied preemption of Swiss-law claims that Congress had "instructed … district courts to entertain"); *In re Petrobras Sec. Litig.*, 169 F.Supp.3d 547, 551 (S.D.N.Y. 2016) (federal statute preempting state-law claims did not preempt foreign-law claims absent express statement, "[d]espite how well a ban on foreign law claims might fit within the larger statutory scheme"); *Comrie v. IPSCO Inc.*, 2008 WL 5220301, at *4-5 (N.D. Ill. Dec. 10, 2008) (finding no preemption of foreign law absent "clear[]" statement in "statutory text").

This uniform conclusion makes perfect sense.  In the American system of dual sovereignty, citizens are simultaneously subject to both state law and federal law. The Supremacy Clause provides a clear rule that whenever "the Constitution or Laws of any State" are "Contrary" to federal law, federal law prevails.  U.S. Const., art. VI, cl. 2.  And although implied preemption has its critics, *see, e.g., Kansas v. Garcia*, 140 S.Ct. 791, 807-08 (2020) (Thomas, J., joined by Gorsuch, J., concurring), courts have found conflicts (and upheld the supremacy of federal law) even when Congress' judgment to displace state law is not explicit.  *See, e.g., Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000); *Williams v. Marinelli*, 987 F.3d 188, 198-206 (2d Cir. 2021); *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 105-07 (2d Cir. 2010).  But the relationship between federal law and foreign law is critically different.  Unlike states, whose sovereignty "is qualified and limited by the

34

conditions of the Federal constitution," *Mahon v. Justice*, 127 U.S. 700, 705 (1888), foreign nations are "distinct sovereignties, possessing equal rights and equal independence." *Berizzi Bros. Co. v. The Pesaro*, 271 U.S. 562, 571 (1926) (quoting *The Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116, 136 (1812)). Given the foreign-affairs implications of overriding the laws of another sovereign nation, principles of comity "guid[e] courts, where possible, towards interpretations of domestic law that avoid conflict with foreign law." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 111 (2d Cir. 2013) (citing *In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1046-48 (2d Cir. 1996)). Thus, while Congress certainly "has the authority to" override foreign law when it acts explicitly, courts do not readily "imply such a result" but endeavor to avoid conflict. *See, e.g.*, *LaSala*, 519 F.3d at 139.

Neither §546(e) nor §561(d) "expressly preempt[s] or displace[s] foreign common law claims." SA.97 (*Fairfield IV*, 2021 WL 771677, at *3). Neither mentions foreign law, let alone foreign common law. As detailed above, §546(e) is a limitation on a domestic trustee's statutory avoidance powers; its plain text does not reach state common law claims, much less foreign common law claims. *See supra* pp.18-23. And while §561(d) extends this limitation on statutory "avoidance powers" to "case[s] under chapter 15," it leaves common law claims untouched. Accordingly, the Bankruptcy Code does not preempt BVI constructive trust claims, and the courts below correctly denied Defendants' motion to dismiss them.

2. Defendants' contention that the lower courts' analysis "elevated" foreign law "above both state and federal law" is without merit. *See* Defs.Br.37-41. Nothing in either decision so much as hints that "the Supremacy Clause … make[s] federal law subordinate to foreign law when applied within the United States." Defs.Br.37. Instead, the courts simply recognized that federal law (namely, Chapter 15) authorizes foreign representatives to bring claims under foreign law in U.S. court, and that nothing else in federal law (such as 11 U.S.C. §§546(e) or §561(d)) bars the Liquidators' foreign common law claims. *See* SA.36, 40 (*Fairfield V*, 630 F.Supp.3d at 492-93, 494); SA.97 (*Fairfield IV*, 2021 WL 771677, at *3); SA.76 (*Fairfield III*, 2020 WL 7345988, at *10). Allowing the Liquidators to bring BVI common law claims in a Chapter 15 case is thus a straightforward application of federal law; it in no way "subordinate[s]" federal law to foreign law. *Contra* Defs.Br.37.

Equally flawed is Defendants' assertion that the lower courts "elevated" foreign common law "over similar state common law." Defs.Br.39. The lower courts merely applied settled doctrine, under which foreign law is not impliedly preempted in the same way as state law. As discussed above, implied-preemption doctrines do not come into play unless and until a court has determined that the express text of §546(e) does not reach common law claims. Moreover, all those implied-preemption doctrines (impossibility preemption, obstacle preemption, and field preemption) are rooted in the American system of dual sovereignty. *See supra*

pp.34-35. Those doctrines do not provide grounds for displacing the law of a distinct, sovereign nation. Tellingly, Defendants do not cite a single case holding that Congress impliedly preempted an otherwise-applicable foreign law. Nor do they meaningfully dispute the lower courts' holding that "express statutory language" is required to displace "otherwise applicable foreign law." SA.76 (*Fairfield III*, 2020 WL 7345988, at \*10); *accord* SA.36, 40 (*Fairfield V*, 630 F.Supp.3d at 492-93, 494).

Defendants' contentions that U.S. courts generally "apply foreign law as a matter of comity," Defs.Br.39, and withhold comity where appropriate to avoid the violation of important public policies, Defs.Br.41 (citing Defs.Br.34-35), are true but irrelevant. Again, Congress has affirmatively directed U.S. courts to "cooperate to the maximum extent possible with a foreign court or a foreign representative" carrying out a recognized foreign bankruptcy proceeding, 11 U.S.C. §1525; *see also id.* §§1501, 1507-09, 1521(a), which necessarily requires them to apply foreign law in Chapter 15 proceedings. *See, e.g., In re Fairfield Sentry Ltd.*, 714 F.3d 127, 138-39 (2d Cir. 2013) (Chapter 15 "direct[s]" courts to look to "foreign law"). The so-called "default rule[s]" Defendants invoke are no basis for overriding Congress' clear directive to entertain foreign law claims under Chapter 15. *Contra* Defs.Br.41. In fact, Chapter 15 only counsels *against* applying foreign law if it is "manifestly contrary to [U.S.] public policy," 11 U.S.C. §1506—an exceedingly narrow carve-out triggered by "exceptional circumstances concerning matters of fundamental

importance for the United States." *In re Agro Santino, OOD*, 653 B.R. 79, 98 (Bankr. S.D.N.Y. 2023) (quoting *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010)); *see also Fairfield*, 714 F.3d at 139 (holding that "[t]he statutory wording requires a narrow reading" and noting "[f]ederal courts in the United States have adopted this view"). Defendants have not even argued that allowing the Constructive Trust Claims to proceed is "manifestly contrary" to U.S. policy. It plainly is not.

Ultimately, Defendants' argument boils down to a gestalt notion that "foreign law should [not] be applied in circumstances where similar state law would be preempted." Defs.Br.39. But even putting aside that the premise does not apply to the claims here, *see infra* p.40, Defendants fail to muster any authority for this proposition. Congress plainly has the power to choose to preempt state law, but not similar foreign law—and our system of dual sovereignty and comity towards foreign sovereigns makes that a perfectly rational policy choice. In fact, Congress has taken that very approach in a number of contexts. For instance, the Securities Litigation Uniform Standards Act, 15 U.S.C. §78bb, "preempts covered class actions 'based upon the statutory or common law of any State,'" but does not preempt similar actions based upon foreign law. *See LaSala*, 519 F.3d at 138-39. Similarly, the Employee Retirement Income Security Act, 29 U.S.C. §1144(a), preempts state-law claims but not foreign claims. *See Comrie v. IPSCO Inc.*, 2008 WL 5220301, at *4-5 (N.D. Ill. Dec. 10, 2008). So too here, the Bankruptcy Code reflects a

congressional intent to preclude certain state common law claims, *see Tribune Co.*, 946 F.3d at 90, but not foreign law claims, *see Condor Ins.*, 601 F.3d at 327. Defendants offer no response to *LaSala* or *Comrie*—even though the bankruptcy court relied on both. *See* SA.76 (*Fairfield III*, 2020 WL 7345988, at *10).

To recap, Congress opened U.S. courts to foreign common law claims by enacting Chapter 15; neither the Safe Harbor's limitation on statutory avoidance powers nor anything else in the Bankruptcy Code expressly precludes such claims; and the implied-preemption doctrine is simply inapplicable to foreign law. Accordingly, the courts below correctly held that there is no valid basis to dismiss the Constructive Trust Claims. SA.36 (*Fairfield V*, 630 F.Supp.3d at 492-93); SA.97 (*Fairfield IV*, 2021 WL 771677, at *3). This Court should affirm those decisions.

## II. In Any Event, Allowing The Constructive Trust Claims To Proceed Is Consistent With The Purposes And Design Of Chapter 15.

Defendants' novel effort to extend implied-preemption principles to foreign common law claims faces one more obstacle: Even if an implied-preemption analysis were appropriate, *but see supra* Part I.B., the Liquidators' claims would not be preempted. While the courts below (correctly) did not reach the question, *see* SA.97 (*Fairfield IV*, 2021 WL 771677, at *3), this Court could affirm on the alternative ground that allowing the Constructive Trust Claims to proceed would not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" reflected in the Bankruptcy Code. *See Hillman*, 569 U.S. at

490. In fact, exactly the opposite is true. Allowing the Constructive Trust Claims to proceed would further the purposes animating the Code, particularly Chapter 15.

1. Even putting Chapter 15 to one side, state common law claims akin to the Constructive Trust Claims here would not be preempted. As noted, the basic design of the statutory avoidance provisions in Chapter 11 and the limitations on those provisions in §546 is that there are circumstances where the extraordinary statutory powers granted to a trustee should be limited to avoid upsetting settled expectations. Given that congressional policy judgment, it is reasonable to prevent the trustee from pursuing state common law actions that mimic statutory avoidance powers in their elements and details. But even in the domestic context, that rationale does not apply to common law claims with different elements, as numerous courts have concluded. *See, e.g.*, *In re U.S. Mortg. Corp.*, 492 B.R. 784, 810-11 (Bankr. D.N.J. 2013); *In re Lehman Bros. Holdings Inc.*, 469 B.R. 415, 459 (Bankr. S.D.N.Y. 2012); *AP Servs. LLP v. Silva*, 483 B.R. 63, 72 (S.D.N.Y. 2012). That is particularly true of claims—like those at issue here—that sound in fraud.[4] *See, e.g.*, *Lehman Bros.*, 469 B.R. at 449-51 & n.19, 456-60; *Quorum Health Corp.*, 2023 WL 2552399, at *12.

---

[4] To be sure, *Tribune Co.* held that creditors cannot evade §546(e) by bringing claims that would be avoidance actions governed by §546(e) if brought by the trustee. *See* 946 F.3d at 91-93. But that rationale is doubly inapplicable here, as the Liquidators are bringing these claims in their capacity as foreign representatives under Chapter 15, and the Constructive Trust Claims sound in fraud—and thus do not pose any implicit conflict with the policies in §546(e). Indeed, Judge Rakoff

2. In all events, the judgments Congress made in Chapter 15 cannot be put to the side in any proper implied-preemption analysis. "Chapter 15 was intended to facilitate cooperation between U.S. courts and foreign bankruptcy proceedings." *Condor Ins.*, 601 F.3d at 329; *see* 11 U.S.C. §1501 (legislatively enacted statement of purpose). It is patterned on the United Nations Commission on International Trade Law ("UNCITRAL") Model Law on Cross-Border Insolvency, which was the fruit of a long-term, multinational effort to encourage "inter-jurisdictional collaboration" in cross-border insolvency proceedings. *Condor Ins.*, 601 F.3d at 321-22. The United States championed this effort in hopes that it would enable "parties in a U.S. bankruptcy proceeding" to "obtain assistance" from foreign courts. *Id.* To that end, Chapter 15 expressly instructs that courts should apply its terms "consistent with the principles of comity," with due consideration of "its international origin, and the need to promote an application of th[e] chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. §§1507, 1508.

---

held in 2013 that the Safe Harbor did not preclude the Trustee (Irving Picard) from bringing claims against *some of the same defendants* seeking to avoid transfers that were received directly or indirectly from BLMIS where the defendants allegedly "knew that Madoff Securities was a Ponzi scheme." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *3 (S.D.N.Y. Apr. 15, 2013).

When, as here, a foreign representative commences ancillary proceedings under Chapter 15, the U.S. bankruptcy court "acts as an adjunct or arm of a foreign bankruptcy court where the main proceedings are conducted." *In re Fairfield Sentry*, 458 B.R. at 678-79; *see* 11 U.S.C. §1525 ("[T]he court shall cooperate to the maximum extent possible with a foreign court or a foreign representative."). This ensures that foreign representatives can bring claims in U.S. courts where appropriate—e.g., due to the location of assets or a forum-selection clause—under the same substantive law as the main proceeding. *See Condor Ins.*, 601 F.3d at 327 ("Congress did not intend to restrict the powers of the U.S. court to apply the law of the country where the main proceeding pends."); *In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) (Chapter 15 dictates "respect for the laws and judgments of other nations."), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007).The purpose of Chapter 15 is to give effect to foreign law—not to override it. That purpose also dovetails with the Code's broader aims. The U.S. expects "reciprocal cooperation" when one of its citizens appears before a foreign court, seeking the application of U.S. law in aid of a U.S. bankruptcy proceeding. *See Condor Ins.*, 601 F.3d at 321-22 & n.10.

The principles of comity and reciprocity that animate Chapter 15 strongly mitigate against the conclusion that §561(d) impliedly preempts the Constructive Trust Claims. Indeed, refusing to allow foreign representatives to litigate foreign common law claims in Chapter 15 proceedings would "lend a measure of protection

42

to debtors to hide assets in the United States out of the reach of the foreign jurisdiction." *Id.* at 327. That, in turn, would turn the Safe Harbor into "a safe haven for looters and fraudsters of foreign company assets that are transferred to the U.S. and who use banks or brokers to help carry out their schemes." *Norske Skogindustrier*, 629 B.R. at 763 n.38. That is not what Congress had in mind.

Ultimately, if this Court (for whatever reason) gets to Defendants' preemption argument, the analysis is straightforward. There is no dispute that if the Constructive Trust Claims had been brought in a BVI court, BVI law would *not* bar them based on their connection to a securities contract. *See* Liqs.' 22-2101 Br. 54; Defs.Br.34. Nor is there any dispute that Congress intended for U.S. courts presiding over ancillary proceedings to respect and apply foreign law on that point. It was bad enough that the courts below viewed §561(d)'s limitation on "avoidance powers" to reach extraterritorially and override foreign *statutory* avoidance claims. *See* Liqs.' 22-2101 Br. 54-55, 66-67. If §561(d) can be stretched so far as to implicitly override *non-statutory*, *non-avoidance* claims under foreign law, then there is little left of Congress' express policy judgments in Chapter 15.

2. Defendants' contrary arguments fall flat. *See* Defs.Br.29-36. Again, Congress did not "expressly appl[y] the Safe Harbor to this precise context," or "expressly forb[id]" the Constructive Trust Claims from proceeding. *Contra* Defs.Br.29, 34. Section 561(d) only "limit[s] avoidance powers"; so, even assuming

43

that it applies extraterritorially, its plain terms simply do not extend to foreign common law claims. If those provisions were as express as Defendants pretend, then there would be no need to resort to implied-preemption principles or implied anything. *See supra* Part I.A.

Nor do the purposes reflected in the Bankruptcy Code support the atextual bar on foreign common law claims that Defendants seek to impose. The purpose of the Safe Harbor "is to protect a national, heavily regulated market" by "limiting the circumstances … under which securities transactions could be unwound." *Tribune Co.*, 946 F.3d at 92, 94. But its protection is "not all encompassing"; even in domestic proceedings, the Safe Harbor does not protect intentional fraudulent transfers, nor does it "offer 'fail safe' protection against every cognizable claim" that might be brought under state law. *Lehman Bros.*, 469 B.R. at 449-50. And while the Safe Harbor "overrides" the Bankruptcy Code's "general aim" of "'maximiz[ing] the assets available to creditors'" with respect to certain settled domestic securities transfers, Defs.Br.30 (quoting *Tribune Co.*, 946 F.3d at 94), it does not override Chapter 15's express purpose of promoting comity and reciprocity in cross-border insolvencies, *see* 11 U.S.C. §§1501, 1507, 1521, 1525.

To the extent there is tension between Congress' objective of protecting settled securities transactions and Congress' objective of promoting comity and reciprocity in cross-border insolvency proceedings, the former should not be permitted to run

roughshod over the latter. "Courts customarily accommodate statutory provisions in tension with one another where the principal purpose of each is attainable by limiting each in achieving secondary goals." *Tribune Co.*, 946 F.3d at 94; *cf. BP P.L.C. v. Mayor & City Council of Balt.*, 141 S.Ct. 1532, 1539 (2021) ("That a law might temper its pursuit of one goal by accommodating others can come as no surprise."). Here, that approach cuts decisively against Defendants' approach of reading §546(d) and §561(e) so broadly as to bar foreign common law claims that would provide a basis for relief in a foreign main proceeding. Such an approach would do little to further Congress interest in protecting U.S. securities markets, as such claims could still be pursued in foreign courts. *See* Defs.Br.34 (conceding that the Liquidators could have avoided the Safe Harbor by asserting their claims in BVI courts).[5] What it would do, though, is thwart the central purpose of Chapter 15, by blocking foreign liquidators from obtaining assistance from U.S. courts—and disincentivizing foreign nations from providing assistance to U.S. parties.

Defendants invoke "policy" concerns, Defs.Br.34-35, but they do so without ever acknowledging that Congress already accounted for policy concerns when it

---

[5] Defendants assert that "the claims [the Liquidators] did assert there were rejected by the BVI courts on their merits." Defs.Br.34. As the Liquidators have elsewhere explained, that is not accurate. The question of whether the Liquidators can recover fraudulently inflated payments based on NAVs issued in bad faith was never raised or decided in the BVI litigation. *See* Liqs.' 22-2101 Br. 68-69.

allowed courts to opt out of applying foreign law if doing so would be "would be *manifestly contrary* to the public policy of the United States."  11 U.S.C. §1506 (emphasis added).  Defendants' felt-need to avoid that language is telling.  As this Court has recognized, "Section 1506 does not create an exception for any action under Chapter 15 that may conflict with public policy, but only an action that is '*manifestly* contrary.'"  *Fairfield*, 714 F.3d at 139 (quoting 11 U.S.C. §1506).  And that language requires a "narrow reading."  *Id.*  Defendants have not even tried to channel their policy arguments through it, which yet again underscores the way that their sweeping safe-harbor reading would destroy Congress' carefully calibrated statutory scheme—which itself reflects the necessary balancing of different policy concerns.  *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017).

The remainder of Defendants' implied-preemption argument is a prolonged exercise in question-begging; it proceeds from the wholly unjustified premise that allowing the Constructive Trust Claims to proceed would "conflict with federal law" or "frustrate federal policy."  *See* Defs.Br.33-36.  Defendants are right about this much:  "Chapter 15 itself is the statutory enactment of how Congress intends to afford comity to foreign liquidation proceedings."  Defs.Br.35.  But Defendants completely ignore what Chapter 15 explicitly prescribes—namely, that U.S. courts "shall cooperate to the maximum extent possible with a foreign court or a foreign representative" executing a recognized foreign bankruptcy, including by applying

46

foreign law unless "manifestly contrary to the public policy of the United States." 11 U.S.C. §§1506, 1525; *see, e.g.*, *Condor Ins.*, 601 F.3d at 327. It makes no sense to read the Bankruptcy Code as inviting foreign representatives to commence ancillary proceedings under Chapter 15, but then barring them from pursuing foreign law claims that the foreign court overseeing the main proceeding would permit them to pursue. Allowing the Constructive Trust Claims to move forward will not frustrate Congress' purpose in enacting the relevant provisions of the Bankruptcy Code.

## CONCLUSION

This Court should affirm the district court's denial of Defendants' motion to dismiss the Constructive Trust Claims.

Respectfully submitted,

DAVID J. MOLTON
MAREK P. KRZYZOWSKI
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

s/Paul D. Clement
PAUL D. CLEMENT
 *Counsel of Record*
MATTHEW D. ROWEN[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

[*] Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs-Appellees*

October 20, 2023

47

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This brief complies with the type-volume limitation of Second Circuit Rule 32.1(a)(4)(A) because it contains 11,526 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

October 20, 2023

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that, on October 20, 2023, an electronic copy of the foregoing Brief for Plaintiffs-Appellees was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.


s/Paul D. Clement
Paul D. Clement